IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

IN RE: )
) Chapter 7
ROSS MICHAEL KUPER, )
) Bankruptcy No. 17-00267
Debtor. )

**RULING ON MOTION FOR RELIEF FROM STAY AND MOTION TO DETERMINE SECURED STATUS OF CLAIM**

These matters came on for hearing in Mason City, Iowa. Mark Walk appeared for Osage Cooperative Elevator ("the Coop"). Judith O'Donohoe appeared for Debtor Ross Michael Kuper ("Debtor"). The Court heard testimony and received evidence. The Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2).

**STATEMENT OF THE CASE**

The Coop has a claim against Debtor for unpaid expenses. Debtor also has a claim against the Coop based on a membership interest and patronage dividends. The Coop asks the Court to lift the stay so it can set off its claim against Debtor's ownership interest and patronage dividends. Debtor asks the Court to determine the Coop's secured status. Debtor argues that the Coop is unsecured because it did not file a financing statement. He also argues that setoff is improper because the debts are not mutual. The Coop argues that it may deem the debt it owes to Debtor "due" under its bylaws. The Court agrees with the Coop.

## BACKGROUND AND FINDINGS OF FACTS

Debtor has been a member of the Coop since 2003. He has done business with the Coop for at least 10 years. He applied for membership and was admitted under the name Reed Kuper. The Coop's records have no entries for a Ross Kuper (Debtor's name). It is unclear why this is so. This is irrelevant to the decision however, as the parties make no arguments based on this factual curiosity.

Debtor has received a patronage dividend check (his share of the Coop's income) from the Coop for the last 10 years. Debtor's membership interests in the Coop is worth $250.00. In addition, the Coop owes him deferred patronage dividends of $60,732.83 in the form of local preferred stock and regional preferred stock for each year from 2005–2015. The Court will occasionally refer to these interests collectively as "the assets."

On November 3, 2016, the Coop sued Debtor. The Coop sought repayment for product that Debtor had purchased from the Coop, for which he had not yet paid. In the lawsuit, the Coop requested a judgment of $72,794.38, which it claimed was Debtor's unpaid balance. (On Debtor's bankruptcy petition, he listed the Coop's unsecured claim as $71,764.00.) Around this time, and in response to the lawsuit, Debtor offered to assign his patronage dividends to the Coop to pay this claim but the Coop refused. The Coop was unwilling at that time to accelerate payment of the patronage dividends, which were not due and payable to him.

2

On March 20, 2017, Kuper filed this Chapter 7 bankruptcy, staying the lawsuit. On his bankruptcy petition, Debtor listed his Coop membership interests and the deferred patronage dividends as assets, but did not claim them as exempt. On June 29, 2017, the Court entered an order discharging Debtor.

On July 10, 2017, the Coop filed a motion for relief from automatic stay. It sought permission to set off its claim against the assets based on its bylaws. Debtor resisted, arguing that the Coop had no setoff right because its claim was unsecured. The Coop did not file a UCC statement to perfect any security interest in the assets. The Coop filed a motion to strike Debtor's resistance, arguing that Debtor did not have standing because he did not claim the assets as exempt. The Court denied the motion to strike.

On August 15, 2017, the Chapter 7 Trustee filed a report of abandonment that included the membership interests and patronage dividends: "All of Debtor's right, title and interest in and to stock, deferred patronage dividends or other financial interests in Osage Cooperative Elevator and AgVantage FS." Trustee stated that this property was "burdensome or of inconsequential value to the estate because: Secured debt exceeds value of property and/or no value to bankruptcy estate. . . ." No one objected to abandonment.

On September 19, 2017, Debtor filed a motion to determine the secured status of the Coop's claim. Debtor admits that the Trustee abandoned the assets, but argues that the Coop was either unsecured or not fully secured.

Trustee filed a response, noting that no one objected to his report of abandonment, and that there are other competing security interests besides the Coop. Trustee noted that these secured interests far exceed the value of the assets, and those secured parties include "Farm Credit Services of America, PCA which is owed in excess of $136,000.00 and AgVantage FS which is owed in excess of $93,693.00." Trustee notes that, although Debtor listed these claims as unsecured, the UCC 1 financing statements filed on these assets indicate otherwise.

The Coop also filed a response. The Coop notes that Trustee has abandoned the assets and that Debtor had not claimed the assets as exempt. The Coop concludes that the assets must go to secured creditors and that it has the right to those assets for the purposes of setoff.

## CONCLUSIONS OF LAW AND ANALYSIS

### I.  Motion for Relief from Stay

As an initial matter, the Court finds that the Coop's Motion for Relief from Stay is moot because the discharge has entered and there is now no automatic stay. See Mitchell v. Bigelow (In re Bigelow), 393 B.R. 667, 670 (B.A.P. 8th Cir. 2008) ("The discharge, which terminated the stay under § 362, was entered . . . .").

11 U.S.C. § 362(c) provides:

Except as provided in subsections (d), (e), (f), and (h) of this section—

(1) **the stay of an act against property of the estate** under subsection (a) of this section **continues until such property is no longer property of the estate**;
(2) **the stay of any other act** under subsection (a) of this section **continues until** the earliest of—
(A) the time the case is closed;
(B) the time the case is dismissed; or
(C) if the case is a case under chapter 7 of this title concerning an individual or a case under chapter 9, 11, 12, or 13 of this title, the time **a discharge is granted** or denied . . . .

11 U.S.C. § 362.  This section "provides for termination of the automatic stay when the property is no longer property of the estate and after the discharge is granted or denied."  In re Cureton, 38 B.R. 279, 279 (Bankr. D. Minn. 1984).  After the discharge enters, the discharge "will extinguish the § 362 automatic stay and substitute a § 524(a) permanent injunction."  In re Daniels, 493 B.R. 740, 744 (Bankr. N.D. Miss. 2013) (internal quotation marks omitted) (quoting Chapman v. Bituminous Ins. Co. (In re Coho Resources, Inc.), 345 F.3d 338, 344 n.16 (5th Cir. 2003)).

Here, discharge entered on June 29, 2017.  Accordingly, there is no automatic stay and the Coop's Motion for Relief from Stay is moot.

II.    **Motion for Determination of Secured Status and Setoff**

Debtor asks the Court to determine the Coop's secured status because he believes it effects the Coop's ability to assert setoff.  Debtor argues that he listed

5

the Coop as unsecured and that the Coop has not filed a proof of claim asserting that it is secured. Debtor also argues that the Coop's debt is not secured because the Coop did not file a UCC financing statement. Debtor concludes that Trustee's strong-arm power now trumps the Coop's alleged secured claim and any right to setoff because of that secured position. Debtor cites Sherman v. Eugene Farmers Coop. (In re Cosner), 3 B.R. 445 (Bankr. D. Or. 1980), where the court rejected the defendant's argument that their bylaws created a security interest in debtor's capital reserve account because "a security interest may be said to have been available against the bankrupt, [but] none is available against the trustee without perfection." Id. at 448. Debtor does not address Trustee's position that other secured creditors would be entitled to the property if the Coop is not. Debtor appears to be asserting only that the Coop would be unsecured and thus behind other secured creditors that are not a party to this proceeding.

The Coop responds on two fronts. First, it believes it is secured by a first lien and entitled to the proceeds on that basis. Second, it asserts that it has a right to setoff—which functionally makes it secured even without a lien. The Coop argues that it has a security interest in the assets according to Iowa law and the Coop's bylaws. The Coop argues that Debtor cannot assert the Trustee's strong-arm interest because he is not the Trustee and further notes that the Trustee has abandoned the assets. The Coop argues further that it is secured because it has a

6

right of setoff. In particular, the Coop believes that section 8.5 of the cooperative's bylaws entitles them to a right of setoff:

> 8.5. Setoffs. The Association shall have **a first lien** and **right of setoff** against stocks and other equities in the Association of each member or patron for all indebtedness to the Association whether then due or to become due, as shown by the books of the Association, of the holder of any such stocks, or to whom such equities are created; and the Association may also deduct any such indebtedness,. In [sic] whole or in part, from such member's or patron's equities in the Association or from any funds payable by the Association to such member or patron and nothing shall prejudice the setoff rights of the Association hereby conferred.

The Coop argues that, under Iowa law, the cooperative board has broad discretion, subject to these cooperative bylaws, on whether to consider patronage dividends presently due and payable. Mitchellville Coop. v. Indian Creek Corp., 469 N.W.2d 258, 260 (Iowa Ct. App. 1991) ("Iowa Code chapter 499 makes it clear that the decision as to redemption or setoff of patronage funds is placed squarely with the cooperative's board of directors."). The Coop concludes that it has a valid setoff against the assets.

In response, Debtor admits that, if the Coop has a right to setoff, then the Trustee's strong-arm power would not apply because setoff would essentially make it secured. However, he argues that the Coop has not met the requirements for a valid setoff under 11 U.S.C. § 553. Debtor argues that the mutuality of debts requirement is not satisfied. Debtor argues that the debts are not mutual because the patronage dividends are not immediately payable.

### A. Strong-Arm Powers

As an initial matter, the Court will address Debtor's argument that the Coop is unsecured because of the Trustee's "strong arm" powers.

> [T]he Bankruptcy Code's "strong arm" powers in § 544(a)(1) . . . give a trustee the rights and powers of a hypothetical judicial lien creditor to avoid the transfer of an unperfected interest in the debtor's property . . . because the lien was not perfected in accordance with state law prior to the filing of the bankruptcy case. The Bankruptcy Code gives the trustee (or debtor in possession) a hypothetical judicial lien that attaches to all of the property of the bankruptcy estate "and is superior to any other interest that is unperfected on the petition date." The trustee receives this superior interest even if he was aware of the prior unperfected interest.

Leonard v. Murphy (In Matter of Leonard), No. A15-8044, 2016 WL 1417964, at *7 (Bankr. D. Neb. Apr. 8, 2016) (citations omitted). "The clear majority of Circuit and Appellate Panels," including the Eighth Circuit, have held that Debtors do not have standing to assert the Trustee's strong-arm powers. Smith v. One West Bank (In re Smith), 459 B.R. 571, 572 (Bankr. M.D. Pa. 2011) (citing In re Merrifield, 214 B.R. 362, 365 (8th Cir. BAP 1997)). As a result, the Court agrees with the Coop that Debtor does not have standing to assert the Trustee's strong-arm powers. Thus, the Court rejects Debtor's argument that the Coop is unsecured because the Coop did not file a UCC financing statement.

### B. Setoff

Debtor also argues the Coop is unsecured because it does not have a right of setoff here. Debtor argues that setoff is not allowed because the obligations are not

8

mutual. In particular, Debtor argues that the Coop's debt to him—his right to payment from the patronage dividends—are not yet due and owing to him. As evidence, Debtor notes that before he filed bankruptcy, he asked the Coop to set off the amount he owed against his patronage dividends, but the Coop refused claiming that the patronage dividends were not yet due and payable to him.

Section 553 sets out the Bankruptcy Code's setoff provision. It provides:

> [T]his title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553. "The Code merely confirms a right of setoff in bankruptcy proceedings where it exists under non-bankruptcy law." United States v. Krause (In re Krause), 261 B.R. 218, 223 (B.A.P. 8th Cir. 2001). In other words, "§ 553(a) preserves whatever right of setoff a creditor may have." Sarachek v. Luana Sav. Bank (In re Agriprocessors, Inc.), 546 B.R. 811, 825–26 (Bankr. N.D. Iowa 2015), aff'd, 547 B.R. 292 (N.D. Iowa 2016), aff'd sub nom. In re AgriProcessors, Inc., 859 F.3d 599 (8th Cir. 2017). "The amount subject to setoff is a secured claim." In re Krause, 261 B.R. at 222 (citing 11 U.S.C. § 506(a)).

"Iowa law provides that, to establish a right of setoff, 'the **demands must be mutual** and must exist between the same parties, and be of the same grade and nature or due the same capacity or right.'" In re Meyer, 563 B.R. 708, 716 (Bankr.

9

N.D. Iowa 2017) (emphasis added) (quoting In re Marriage of Ballstaedt, 606 N.W.2d 345, 350 (Iowa 2000)).  Debtor cites Nelson v. Cavalier Rural Electric Coop. (In re Axvig), 68 B.R. 910 (Bankr. D.N.D. 1987), to support his assertion that the debts are not mutual.  In that case, the court found that debtor's capital stock interest did not satisfy the mutuality requirements for a setoff because, under North Dakota law, the debtor's capital stock interest was not immediately payable. Id. at 919.  ("The capital stock in the case at bar, because it does not represent a debt and because it is not due and owing, is thus not subject to setoff.").

> There is some support for this position in other jurisdictions as well:
>
> The requirement that a debt be mature actually appears to be an element of the requirement of mutuality. In other words, if one of the debts is not mature, and is, consequently not due, there can be no finding of mutual debts. Such a requirement has been noted by bankruptcy courts interpreting various states' common law doctrines of setoff.

In re MCB Fin. Grp., Inc., No. 10-11176-WHD, 2011 WL 8609454, at *5 (Bankr. N.D. Ga. Mar. 31, 2011) (collecting cases).

This position is not, however, the prevailing rule.  See, e.g., In re WL Homes LLC, 471 B.R. 349, 353 (Bankr. D. Del. 2012) (internal quotation marks omitted) ("[S]etoff is permitted when, at the time the bankruptcy petition is filed, the debt is absolutely owing but is not presently due, or when a definite liability has accrued but is not yet liquidated."); In re Kroh Bros. Dev. Co., 101 B.R. 114, 117 (Bankr. W.D. Mo. 1989) (collecting cases holding "that 'the right of setoff may be asserted

10

in the bankruptcy case even though at the time the petition is filed one of the debts involved is absolutely owing but not presently due, or where a definite liability has accrued but is as yet unliquidated.  Nor is it necessary that the debt sought to be setoff be due when the case is commenced.'").  Thus, as a general rule, if a debt is owing, but not yet due at the time of the bankruptcy filing, it can still form a mutual debt for setoff purposes.

Moreover, Iowa law controls this issue.  Under Iowa Code Chapter 499, which "sets forth the rules upon which cooperatives may operate in Iowa," Mitchellville Coop., 469 N.W.2d at 260, "the decision as to redemption or setoff of patronage funds is placed squarely with the cooperative's board of directors," and is "subject to exceptions contained in the bylaws." Id. 263–64.  Thus, under Iowa law, the Coop has broad discretion on whether to determine its obligation due and payable to a member.  Id.

In Mitchellville Coop., the Iowa Court of Appeals, on the one hand, concluded as follows:

> **We do not believe the patronage funds** sought to be setoff by [the member] **are an indebtedness of the cooperative which is due and payable** to members, but represent an interest which will be paid at some future date to be determined by the board of directors pursuant to the priority set forth in the cooperative bylaws.

Mitchellville Coop., 469 N.W.2d at 263.  The Court did not, however, find that setoff was unavailable.  Instead it held that "the decision as to redemption or setoff

11

of patronage funds is placed squarely with the cooperative's board of directors" and is "subject to exceptions contained in the bylaws." Id. at 263–64. This is consistent with the Coop's position here and the broad discretion the Coop has on the issue. The Coop's board of directors' decision previously refusing to set off Debtor's patronage dividends against his debt, on the basis that it was not due and payable, was its right to exercise its discretion at the time under Iowa law and its bylaws. The Coop is not bound by its previous decision—that decision is only evidence of how the Coop exercised its discretion in the past.

Here, the bylaws give the Coop broad discretion on this issue. "**The Association shall have a first lien and right of setoff against stocks** and other equities in the Association of each member or patron **for all indebtedness** to the Association **whether then due or to become due** . . . ." Iowa law gives the Coop very broad discretion in making its decision on setoff—the intent and spirit of the Coop's bylaws supported that discretion. This is dispositive of this issue. For the purposes of the mutuality requirement—this language essentially allows the Coop to deem the debts that it owes to Debtor "due" for setoff purposes at the time it exercises the setoff right. The Court finds that the Coop has a right of setoff in the assets, which total $60,982.83. Accordingly, the Coop is secured in the amount of $60,982.83.

## CONCLUSION

**WHEREFORE**, the Coop's Motion for Relief from Stay is DENIED AS MOOT.

**FURTHER**, Debtor's Motion for Determination of Secured Status is GRANTED and the Court determines the Coop's claim is secured by both a lien and a right to setoff.

Dated and Entered:

March 29, 2018

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE